**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ETTA R., <br><br>  Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security <br><br>  Defendant. | Case No. 2:22-cv-06970-BRM <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Etta R.'s ("Plaintiff") appeal of the final decision of the Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act ("Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument, for the reasons set forth below and for good cause shown, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

**I.     BACKGROUND**

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner denying her application for a period of Social Security disability and SSDI benefits. (Tr. at 17–25.) Plaintiff applied for SSDI benefits on September 2, 2020, alleging disability as of

---

[1] Upon the Appeals Council's Order denying Plaintiff's request for a review of the decision of Administrative Law Judge ("ALJ"), the ALJ's decision became the final decision of the Commissioner. (ECF No. 3 (Transcript of Proceedings ("Tr.")) at 1–3.)

July 19, 2019 based on "cervical and lumbar disc disease with resultant radiculopathy, carpal tunnel syndrome, and asthma." (ECF No. 1 ¶ 7.)

The Social Security Administration ("SSA") denied Plaintiff's claim initially on April 26, 2021 (Tr. at 77–82), and upon reconsideration on July 20, 2021 (*id.* at 83–89). Plaintiff filed a written request for a hearing on August 19, 2021. (*Id.* at 74–75.) On November 18, 2021, Plaintiff appeared and testified at a hearing before Administrative Law Judge Leonard Costa ("ALJ Costa"). (*Id.* 30–56.) At the hearing, Plaintiff testified to her prior work, as well as the symptoms of her condition, including pain in the neck, shoulders, and elbow, finger locking when typing, and pain while walking. (*Id.*) An impartial vocational expert also appeared and testified at the hearing. (*Id.*) On January 10, 2022, ALJ Costa issued a decision finding Plaintiff was not disabled under the Act. (*Id.* at 25.) ALJ Costa considered the entire record in his decision, including Plaintiff's subjective testimony, the medical records, and prior administrative medical findings. (*Id.* at 18, 21.) ALJ Costa found, at step one,[2] that Plaintiff had not engaged in "substantial gainful activity" in the twelve months to January 10, 2022, as her employment activity ceased on September 11, 2020. (*Id.* at 18.) At step two, ALJ Costa found Plaintiff had the following "severe medical impairments": "degenerative disc disease of the cervical and lumbar spine, cervical and lumbar radiculopathy, carpal tunnel syndrome and asthma (20 C.F.R. § 404.1520(c))." (*Id.* at 19.) At step three, ALJ Costa did not identify "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 19.) Finally, on step four, ALJ Costa found Plaintiff had the Residual Functional Capacity ("RFC") to perform her previous work as a medical secretary and accounting clerk, as she continued to be able to perform sedentary work for

---

[2] *See infra* Section III, describing these steps.

2

up to six hours a day with some breaks, and could also perform other tasks such as climbing ramps and stairs, stooping, kneeling, crouching, pushing and pulling controls, overhead reaching, handling and fingering objects, and ambulation. (*Id.* at 20–25.) Plaintiff submitted a Request for Review of the Hearing Decision to the Appeals Council on January 12, 2022. (*Id.* at 148–149.) On September 28, 2022, the Appeals Council denied Plaintiff's request for review of ALJ Costa's decision. (*Id.* at 1–3.) On December 2, 2022, Plaintiff filed a civil action in the United States District Court for the District of New Jersey seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). (ECF No. 1 ¶ 11.)

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. *Id.*; *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial

evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

**III.       THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

Under the Act, the SSA is authorized to pay SSDI to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSDI. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.*; *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments"

that significantly limits their physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).

The claimant is not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him or her from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482

6

U.S. at 146–47 n.5. An administrative law judge bears the burden of proof for the fifth step. *Id.* at 263.

On appeal, the harmless error doctrine[3] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 U.S. Dist. LEXIS 62340, at *20 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When

---

[3] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 408–11 (2009) which concerned review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**IV.   DECISION**

Plaintiff generally challenges ALJ Costa's disability determination for insufficiently weighing her subjective testimony, and specifically challenges ALJ Costa's decision on three grounds: (1) ALJ Costa did not appropriately consider the Duty Status Report of treating orthopedist Dr. James Lee ("Dr. Lee"), (2) ALJ Costa did not consider other medical evidence indicating alleged deterioration of her condition in late 2020, and (3) ALJ Costa did not appropriately weigh the finding of Plaintiff's previous employer that she was unable to meet the demands of her past relevant work. (ECF No. 7 at 4.) The Court begins by addressing the general challenge regarding Plaintiff's subjective testimony before addressing each specific challenge.

   **A.   Plaintiff's Subjective Testimony**

Plaintiff argues throughout her brief that ALJ Costa gave insufficient weight to her subjective testimony regarding her condition. Plaintiff claims her testimony is entitled to great weight because of her extensive work history. (*Id.* at 15–16.) Further, she argues the objective evidence corroborates her subjective testimony, both pertaining to the symptoms of her condition (*id.*) and her ability to work in her prior employment (*id.* at 18). The Commissioner argues ALJ Costa adequately considered Plaintiff's subjective testimony by modifying the RFC determination when the testimony was credible, and explaining why he did not find other testimony credible. (ECF No. 9 at 15–17.)

Although an ALJ must explain why they discount a plaintiff's testimony of subjective symptoms, such testimony is not entitled to independent weight unless corroborated by objective medical evidence. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (finding "allegations of

pain and other subjective symptoms must be supported by objective medical evidence"); *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999) (finding an ALJ may reject a claimant's subjective testimony if they do not find it credible as long as they explain why they are rejecting the testimony); 20 C.F.R. § 416.929(c)(4) ("Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."). An ALJ may, therefore, exclude subjective testimony from the RFC determination, or reduce its weight, if they find the testimony is not corroborated by objective evidence.

Here, ALJ Costa considered Plaintiff's subjective testimony regarding her condition and ability to work, and clearly identified what portions of Plaintiff's testimony he found credible, and what parts he did not. ALJ Costa noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (Tr. at 21.) After extensively considering Plaintiff's testimony regarding her condition (*id.* at 21–22), ALJ Costa found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (*id.* at 22). With regard to Plaintiff's testimony about her ability to work, ALJ Costa found her "statements about the intensity, persistence, and limiting effects of . . . her symptoms . . . are inconsistent because although the record confirms that the claimant suffers from physical impairments with resulting limitations in functioning, the record fails to demonstrate that she is precluded from all work." (*Id.* at 23.)

ALJ Costa made detailed comparisons of Plaintiff's testimony with objective medical evidence. For example, regarding "claimant['s] reports [of] a host of symptoms including chronic pain in her back and neck and other limiting symptoms" (*id.* at 24), ALJ Costa noted that "despite her current claims of functional decline, the medical evidence shows no significant objective change in her medical condition to warrant such a change in functioning" (*id.* at 24). On Plaintiff's claims of orthopedic impairments, ALJ Costa stated "although I accept her allegations that her symptoms limit her functional capacity to a moderate degree, she is not consistent to the extent that her capacity is so limited that she is unable to engage in substantial gainful activity." (*Id.* at 23.) He further noted "the treatment records document the claimant's complaints of increased pain with prolonged standing and walking, but nothing inconsistent with an ability to perform sedentary work." (*Id.*) ALJ Costa therefore compared Plaintiff's subjective testimony against the objective medical record to evaluate Plaintiff's credibility.

ALJ Costa also credited Plaintiff's testimony when he saw appropriate. He noted, for example, that "the record supports the claimant's allegations regarding her orthopedic and respiratory impairments," (*id.* at 24) and found "the[] [allegations]consistent in that the claimant's orthopedic disorders have limited the claimant's ability to perform certain tasks" (*id.* at 23).

Therefore, because ALJ Costa considered Plaintiff's testimony, and made findings regarding what portions of the testimony he did and did not find credible, based on comparison against other statements and objective evidence, ALJ Costa adequately weighed Plaintiff's subjective claims, and the Court will not remand on this basis.

10

### B. Medical Opinions

#### 1. Dr. Lee's Opinion

Plaintiff argues ALJ Costa failed to consider the opinion of Dr. Lee that she could no longer meet the regular work duties of her job as a Voucher Examiner, particularly detailed in his Duty Status Report. (ECF No. 7 at 17.) The Commissioner argues, even though Dr. Lee's Duty Status Report was not considered, Plaintiff cannot show harm as the RFC was nonetheless consistent with the Duty Status Report's recommendations. (ECF No. 9 at 19–20.)

Generally, the Federal Regulations require an ALJ to afford great, even controlling, weight to opinions from a treating medical expert. *See* 20 C.F.R. § 404.1527(c). Controlling weight historically meant "the claimant's treating physician's diagnoses and findings regarding the degree of claimant's impairment are binding on the ALJ unless there is substantial evidence to the contrary." *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987). Substantial evidence is "relevant evidence which a reasonable mind might deem adequate to support a conclusion." *Newhouse*, 753 F.2d at 285. A district court is "bound by the Secretary's findings of fact if they are supported by 'substantial evidence.'" *Id.* (citing 42 U.S.C. § 405(g)).

While it is well settled that treating physicians are in a unique position to assess the claimant's limitations, in the Third Circuit "the opinion of a treating physician does not bind the ALJ." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Rather, pursuant to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight only if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." A treating source's conclusory medical opinions, however, will not be given controlling weight. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366–67 (3d Cir. 1984). When controlling weight is not

warranted, several factors are used to determine the weight given to the medical opinion including: the length, nature, and extent of the treatment relationship; supportability by the medical evidence; consistency with the record as a whole; specialization of the source of the medical opinion; and any other factor which tends to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(2)–(6). Ultimately, "[t]he ALJ's finding must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Buckley v. Astrue*, Civ. A. No. 09-5058, 2010 U.S. Dist. LEXIS 77944, at *25 (D.N.J. Aug. 3, 2010) (quoting *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981)).

Here, ALJ Costa considered Dr. Lee's treatment records of Plaintiff. ALJ Costa noted medical records from Orange Orthopedics (the treatment center where Dr. Lee works) detailing Plaintiff's history of lower back pain, including a December 5, 2019 physical examination "not[ing] tenderness to palpation of the lower lumbar spine that radiates to the buttock. She ambulated with a cane but there was 5/5 strength in the lower extremities." (Tr. at 22.) ALJ Costa's decision also detailed Plaintiff's September 10, 2020 visit with Dr. Lee, where Dr. Lee stated "[at] this point this patient sustained an injury to her back that is not chronic . . . . Patient has reached maximal medical improvement from my opinion. She should see a pain management if she continues to have further pain, I will see her on an as-needed basis only." (*Id.*)

As part of his consideration of Dr. Lee's treatment records, ALJ Costa considered Dr. Lee's Duty Status Report, contrary to Plaintiff's allegation (ECF No. 7 at 17) and the Commissioner's admission (ECF No. 9 at 19). Although ALJ Costa's decision inaccurately dates the Duty Status Report as being June 25, 2020 (Tr. at 22), it does consider its content, noting "[Plaintiff] was advised to continue sedentary duty and to return to work July 1, 2020" (*id.*).

Plaintiff does not accurately characterize Dr. Lee's Duty Status Report as indicating she could no longer engage in "continuous sitting, standing, simple grasping, and fine manipulation." (ECF No. 9 at 20.) In fact, the Duty Status Report specifies Plaintiff should return to "sedentary duty" at her work. (Tr. at 386.) This almost certainly implies that Plaintiff was still capable of "continuous sitting," and does not exclude the possibility that she remained capable of "simple grasping, and fine manipulation." Rather, the Duty Status Report indicates Plaintiff was simply no longer capable of "continuous . . . standing."

In any case, ALJ Costa's decision did consider this evidence and ultimately accounted for it in his RFC determination. After considering all the medical evidence, including Dr. Lee's Duty Status Report, ALJ Costa found "the evidence of record, including the evidence provided at the hearing level, to include the claimant's testimony, supports greater limitation to a reduced range of sedentary work." (*Id.* at 24.) ALJ Costa's RFC therefore emphasized Plaintiff has the "residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she could sit up to 6 hours per day but no more than one half hour to one hour at a time." (*Id.* at 20.) This determination aligns with Dr. Lee's recommendation for Plaintiff to return to "sedentary duty," and may even be more restrictive than his recommendation, since the RFC does not require continuous sitting for more than half an hour to an hour at a time. (*Id.*) The other aspects of the RFC do not contradict Dr. Lee's Duty Status Report, as they do not require significant activity beyond "sedentary duty," with the RFC's requirements for Plaintiff's standing being limited to "occasionally climb[ing] ramps and stairs . . . . occasionally stoop[ing]; occasionally kneel[ing]; occasionally crouch[ing], occasionally balanc[ing] and occasionally crawl[ing]" as well as requiring her to use a cane to "ambulate for more than a few feet or on uneven terrain." (*Id.*)

13

ALJ Costa therefore adequately considered Dr. Lee's Duty Status Report among other medical evidence proffered, and the Court will not remand on this basis.

### 2. Medical Evidence of Deterioration

Plaintiff also argues ALJ Costa did not sufficiently weigh medical evidence showing a purported deterioration of her condition in late 2020, including complaints of bilateral hand wrist pain exacerbated by working, positive Tinel's and Phalen's signs, X-Rays showing stage II arthritis, Dr. Meyer's prescription of hand braces for both hands, "a November 25, 2020 MRI of the lumbar spine [showing] 'moderate to severe' central spine canal stenosis and right neural foraminal stenosis," and "[e]lectrodiagnostic testing performed in October 2017 document cervical radiculopathy at the C6 and C7 disc levels as well as mild median nerve neuropathy consistent with carpal tunnel syndrome." (ECF No. 7 at 17.) The Commissioner argues Dr. Meyer's prescription for hand braces, as well as the November 2020 MRI and October 2017 EMG, were considered and weighed by ALJ Costa, who made findings that treatment had managed Plaintiff's symptoms and Plaintiff's grasping and manipulative functions were not impaired. (ECF No. 9 at 20–21.)

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations"). "[I]n making a[n] [RFC] determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

Here, ALJ Costa considered the medical evidence indicating an apparent deterioration in Plaintiff's condition in late 2020 and indicated why he weighed other evidence as more persuasive. ALJ Costa stated that "despite [Plaintiff's] current claims of functional decline, the medical evidence shows no significant objective change in her medical condition to warrant such a change in functioning." (Tr. at 24.) Overall, ALJ Costa found "[a]fter careful consideration of the evidence . . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at 22.) In particular, he acknowledged "[a]n electrodiagnostic study of October 19, 2021, was consistent with C6-7 radiculopathy and mild bilateral median neuropathy due to carpal tunnel syndrome. An MRI of the lumbar spine revealed multilevel degenerative disc disease of the lumbar spine and cervical lumbar radiculopathy." (*Id.*) However, he also determined "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

ALJ Costa was entitled to weigh the evidence based on his impression of the overall record, and his ultimate RFC determination was supported by substantial evidence. He noted an April 21, 2021 "internal medicine consultative examination by Dr. Merlin which demonstrated some limitation but not to the extent of disability." (*Id.*) He recounts Dr. Merlin finding Plaintiff's "grasping strength and manipulative functions were not impaired." (*Id.*) He also states Dr. Merlin found "sensory and neurological examinations were normal. Straight leg raising was negative and

15

reflexes were normal." (*Id.* at 23.) Beyond Dr. Merlin's report, ALJ Costa noted "the current records documenting the claimant ambulated without an assistive device and had 5/5 strength in the right lower extremity," and Dr. Lee's statement that Plaintiff's back injury was "not chronic." (*Id.* 24.) Ultimately, ALJ Costa found "musculoskeletal examinations have not shown any significant limitation in ranges of motion and there is no evidence of any sensory or motor deficits or lower extremity edema." (*Id.*)

ALJ Costa therefore chose to discount Plaintiff's claims of functional decline because of other contradictory evidence. Given ALJ Costa's evaluation of medical scans, mobility testing, and reports of treating physicians, the Court finds ALJ Costa had substantial evidence to support his RFC determination and will not remand on this basis.

## C.     Office of Personnel Management ("OPM") Determination

Plaintiff alleges ALJ Costa did not consider the OPM's determination that she could no longer perform her job with the Veteran's Administration. (ECF No. 7 at 18–19.) Plaintiff claims disability determinations by government agencies are entitled to substantial weight. (*Id.* at 19.) In any case, Plaintiff argues ALJ Costa should have provided some explanation regarding why he rejected the OPM evidence. (*Id.*) The Commissioner argues ALJ Costa was not obligated to provide any analysis of the OPM report in his decision, as a decision by another government agency is not binding on the SSA. (ECF No. 9 at 22.)

The Federal Regulations no longer require an ALJ to analyze a decision by another government agency in a SSDI determination. 20 C.F.R. § 404.1504 ("[W]e will not provide any analysis in our determination or decision about a decision made by any other government agency or nongovernment entity about whether you are disabled, blind, employable, or entitled to any benefits."); *see also* 20 C.F.R. § 404.1520b(c)(1) (stating that evidence such as "[d]ecisions by

16

other governmental agencies and nongovernmental entities" "is inherently neither valuable nor persuasive to the issue of whether you are disabled . . . under the Act"); *Elissa H. v. Kijakazi*, Civ. A. No. 3:22-3003, 2023 WL 2860509, at *13 (D.N.J. Apr. 10, 2023) (finding that "a state agency's disability determination is not binding on the [SSA]"). An ALJ will not analyze the other government agency's determination because of the distinct criteria used by different government agencies as compared with the SSA, meaning that another government agency's determination "is not binding on [the SSA] and is not [the SSA's] decision about whether you are disabled . . . under [SSA] rules." 20 C.F.R. § 404.1504.

Here, ALJ Costa correctly noted he "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s)." (Tr. at 24.) ALJ Costa acknowledged the OPM determination and considered it when determining the duration of Plaintiff's work history. (*Id.* at 18.) He did not, however, evaluate the OPM determination for the purpose of determining Plaintiff's disability.

Since the Federal Regulations clearly state an ALJ will not analyze another government agency's disability determination, ALJ Costa was correct in not evaluating the OPM determination for the purpose of determining Plaintiff's disability. Therefore, the Court will not remand on this basis.

## V. CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Costa erred in determining Plaintiff was not disabled under the Social Security Act. Therefore, Plaintiff's appeal (ECF No. 1) is **DENIED**, and the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

Date: December 11, 2023                    */s/ Brian R. Martinotti*
                                           **HON. BRIAN R. MARTINOTTI**
                                           UNITED STATES DISTRICT JUDGE